UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Karyn M. Kelley

    v.                                                  Case No. 20-cv-162-PB

Charles A. Russell, et al.

**REPORT AND RECOMMENDATION**

Plaintiff Karyn M. Kelley, proceeding pro se, has filed an action under 42 U.S.C. § 1983 alleging that the defendants — Charles A. Russell, Daniel C. Proctor, and, in their official capacity, Merrimack Police Department ("MPD") Officers R. McKenzie, J. Dudash, and A. Groves — violated her constitutional rights. Her amended complaint (Doc. No. 17) is before the magistrate judge for preliminary review pursuant to 28 U.S.C. § 1915(e)(2) and LR 4.3(d)(2). As discussed below, Kelley's amended allegations cannot sustain her constitutional claims for relief. Additionally, her claims cannot be saved by further amendment with additional facts. The district judge should thus dismiss Kelley's amended complaint in its entirety.

I.  **Preliminary review standard**

The court conducts a review of cases filed by pro se plaintiffs to determine, among other things, whether the amended complaint states any claim upon which relief may be granted. See 28 U.S.C. § 1915(e)(2); LR 4.3(d)(2). To survive

1

preliminary review, the amended complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief.'" See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). The court treats as true all well-pleaded factual allegations and, after disregarding conclusory allegations, construes all reasonable inferences in plaintiff's favor. See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). In doing so, the court may consider "documents incorporated by reference in [the amended complaint], matters of public record, and other matters susceptible to judicial notice," including publicly recorded documents from state court judicial proceedings. Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008) (citations omitted). The court may dismiss a pro se plaintiff's case at any time if the amended complaint fails to state a claim on which relief may be granted, the defendant is immune from the relief sought, or the action is frivolous or malicious. See 28 U.S.C. § 1915(e)(2).

**II. Background**

A. **State-court litigation underlying Kelley's claims**

In 2010, Mary Feeney — a non-party in this litigation — ended "a long-term relationship" with Kelley and filed suit in Hillsborough County Superior Court to resolve issues of common property between the two. See Order, Feeney v. Kelley, No. 216-210-EQ-00193 (N.H. Super. Ct., Hillsborough Cty., N.D. June 29,

2010), available at Doc. #1045733, Registry of Deeds, Hillsborough County.[1]  After four years of litigation, the Superior Court held a bench trial to resolve Feeney and Kelley's property claims.  On October 20, 2014, the Superior Court entered a final verdict ordering, in part, a 50/50 partition of real property located at 62 Indian Rock Road, Merrimack, New Hampshire ("Indian Rock Road Property" or "Property").  See Feeney v. Kelley, No. 2015-0049, slip op. at 1-3 (N.H. Oct. 9, 2015).  Kelley appealed this verdict to the New Hampshire Supreme Court ("NHSC").  The NHSC affirmed the verdict, however, after concluding that the Superior Court properly weighed the equitable considerations for a court-ordered partition.  Id.

Following this appeal, the Superior Court appointed a non-party real estate commissioner – defendant Russell — to sell the Property.  See Feeney v. Kelley, No. 2017-0166 (N.H. Jan. 16, 2018).  Kelley filed numerous post-trial motions thereafter to reverse the Superior Court's bench-trial findings and its post-

---

[1] It is "well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand." Kowalski v. Gagne, 914 F.2d 299, 305 (1st Cir. 1990).  The court therefore takes judicial notice of the related Superior Court proceeding and the publicly available documents filed therein "to establish the existence of the [related] litigation, what claims were asserted, and what issues were argued and decided." Barnstable Cty. v. 3M Co., No. CV 17-40002, 2017 WL 6452245, at *4 (D. Mass. Dec. 18, 2017) (internal citations omitted); see also United States v. Mercado, 412 F.3d 243, 247 (1st Cir. 2005) (taking judicial notice of state court proceeding's docket, which was not part of record).

trial efforts to grant relief for Feeney.  The Superior Court denied most of these motions.  Id.  Feeney, in turn, moved to have Kelley vacate the Property.  Dkt. Sheet Index #77, Feeney v. Kelley, No. 216-210-EQ-00193.  The Superior Court conducted a hearing on the motion to vacate and, in December 2016, granted Feeney's request for relief.  Kelley, however, avoided the immediate impact of this ruling by filing a second appeal to the NHSC, which stayed the Superior Court's order to vacate until the NHSC denied her appeal in 2018.  Feeney v. Kelley, No. 2017-0166 (N.H. Jan. 16, 2018).

In March 2019, the Superior Court again ordered Kelley to vacate the Indian Rock Road Property.  See Order, Feeney v. Kelley, No. 216-210-EQ-00193 (Doc. No. 17, at 13) (attached to Am. Compl. as Ex. A) ("August 19, 2019 Order") (briefly summarizing procedural history, including March 2019 Order).  Again, Kelley did not comply.  Instead, she filed for bankruptcy in the U.S. Bankruptcy Court for the District of New Hampshire, resulting in another stay of the Superior Court action.  Id.; see also In re Kelley, No. 19-bk-10567 (ECF No. 1).[2]  In response, Feeney filed a motion in the Bankruptcy Court seeking relief from the automatic bankruptcy stay so that she could proceed with the partition and sale of the Indian Rock Road

---

[2] The court takes judicial notice of the existence of the related bankruptcy litigation, the claims asserted therein, and the issues decided by the Bankruptcy Court in its publicly available written memoranda and opinions.

4

Property. In re Kelley, No. 19-bk-10567 (ECF No. 14). On June 25, 2019, Bankruptcy Judge Peter Cary granted Feeney's request over Kelley's opposition. Id. (ECF No. 38). Per the terms of Judge Cary's Order:

> Mary Feeney may proceed in the in rem proceeding for the partition of the property, to receive any liquidated proceeds of the premises (she may be entitled to) known as 62 Indian Rock Road, Merrimack, N.H., in the consolidated cases pending in the Hillsborough County Superior Court . . . . Further and for purposes of clarification, in rem relief is also granted to proceed with any appeal(s) arising out of the dispute over the in rem partition of the property, in the New Hampshire Supreme Court, stemming from said consolidated proceeding . . . .

Id.

In August 2019, the Superior Court, upon a motion by Feeney, reactivated its in rem proceedings to partition and sell the Property, despite Kelley's objections, given the Bankruptcy Court's order "explicitly permit[ing]" Feeney to proceed. See August 19, 2019 Order (Doc. No. 17, at 13). Kelley responded by filing a motion to close the Superior Court proceeding as discharged through Chapter 7 bankruptcy, a motion for recusal, and a motion for a new trial. See Index #289 & #290, Feeney v. Kelley, No. 216-210-EQ-193. Each of these motions was opposed, found to be meritless, and subsequently denied.

5

B.  **Dispossession of the Indian Rock Road Property**

On September 11, 2019, Feeney, through her post-trial attorney – defendant Proctor – filed a motion for contempt and for an instruction directing the real estate commissioner – defendant Russell – to take immediate possession of the Property.  Kelley did not timely file an objection.  The Superior Court granted Feeney's motion two weeks later.  See Order, Feeney v. Kelley, No. 216-210-EQ-193 (Doc. No. 17, at 23) (attached to Am. Compl. as Ex. D) ("September 25, 2019 Order").  The Superior Court ruled that:

1. Karyn Kelley is dispossessed of the premises known as 62 Indian Rock Road, Merrimack, New Hampshire . . . . Any further entry upon the premises, without the approval of this Court or, the permission of the Commissioner, Charles A. Russell, Esq. ("Commissioner"), shall constitute civil and/or criminal trespass.

2. Karyn Kelley shall surrender the keys to the premises . . . to either the Commissioner and/or the Town of Merrimack Police Department.

3. The Commissioner shall take possession of [the Property] as soon as practical.  Upon request of the Commissioner, a member of the Sherriff's Department shall assist the Commissioner in taking possession . . ., just as would occur in an eviction under a Writ of Possession.

Id.

Days later, after the defendants had entered the Property, see MPD Officers Formal Report (Doc. No. 17, at 25-26) (attached to Am. Compl. as Ex. E), Kelley late-filed an objection to Feeney's September 11, 2019 motion.  Additionally, Kelley filed

6

a motion for "illegally [sic] entry, illegally [sic] seizure of real and personal property . . . civil contempt and criminal trespass," as well as multiple motions essentially seeking to prevent the real estate commissioner from selling the Property. See Dkt. Sheet, Feeney v. Kelley, No. 216-210-EQ-193.  The Superior Court ultimately denied each of these motions. Further, it refused to alter its September 25, 2019 ruling.

In January 2020, the Superior Court approved a proposed order authorizing Russell, as real estate commissioner, to execute and sign the deed selling the Indian Rock Road Property to a buyer.  See Jan. 22, 2020 Notices to Cease and Desist from Kelley to Russell and Proctor (Doc. No. 17, at 27-28) (attached to Am. Compl. as Ex. F)).  The following month, the Superior Court entered an order clearing title to the Indian Rock Road Property.  To date, Kelley has continued to file numerous motions and appeals opposing the court-ordered sale and the court-ordered distributions of proceeds obtained from the sale of the Indian Rock Road Property.  To date, none of Kelley's efforts to that end have been successful.

C.  **Kelley's claims in this case**

In the amended complaint, Kelley asserts two claims arising from her dispossession of the Indian Rock Road Property, for which she seeks damages, interests, costs, and equitable relief. In Count 1, Kelley alleges that defendants Russell and Proctor

7

("Attorney Defendants") violated her Fifth and Fourteenth Amendment due process rights under the U.S. Constitution by filing, "without legal excuse," a motion in Hillsborough County Superior Court to have Kelley vacate the Indian Rock Road Property.  Am Compl. (Doc. No. 17) ¶ 13 (citing August 19, 2019 Order).  Kelley contends that because she filed for bankruptcy in federal bankruptcy court, the Superior Court "could not grant" the Attorney Defendants' request to lift the stay of proceedings or allow Russell, as court-appointed real estate commissioner, to take immediate possession of the Property.  Id. Additionally, she argues that Feeney was not entitled to proceeds from the sale of the Property because Kelley originally listed Feeney's claim as a debt to be discharged by bankruptcy. Id. ¶¶ 14, 17.  Kelley advances both contentions despite the June 25, 2019 Bankruptcy Court Order explicitly permitting the Superior Court to proceed in its "in rem proceeding for the partition" and court-sanctioned sale of the Property.  See id. ¶ 16 (implicitly conceding existence of order); see also Aug. 10, 2019 Order (Doc. No. 17, at 13) (quoting June 25, 2019 Bankruptcy Court Order).  Kelley further asserts that she was deprived of due process because the Superior Court granted Feeney's motions to vacate and to take immediate possession without conducting a live hearing, and also denied her request for an interlocutory appeal "to have the New Hampshire Supreme

8

Court decide if the State Court's docket was discharged in bankruptcy." Am. Compl. (Doc. No. 17) ¶¶ 18-19.

In Count 2, Kelley alleges that on September 28, 2019, all defendants violated her Fourth Amendment rights under the U.S. Constitution by illegally entering, searching, and seizing the Property and by illegally videotaping her possessions. Am. Compl. (Doc. No. 17) ¶ 21. Kelley argues that the defendants' failure to have the Sheriff's Department present when taking possession of her residence deviated from the terms of the Superior Court's "unlawful" September 25, 2019 Order. Id. She contends that, as a result of both this deviation and the unlawful nature of the state-court order, the defendants "illegally searched, seized, and took possession of all real and personal property" she owned. Id. ¶ 22. Additionally, she argues that the defendants are not immune from suit because they "knew" from public records that the Superior Court had awarded Kelley the residence, id. ¶ 30 (citing Doc # 5052189, Hillsborough Country Registry of Deeds), and "knew of other contracts" in which Feeney had "waived all interest" in the Indian Rock Road Property, id. ¶ 34 (citing various deeds and agreements attached to the Am. Compl. as Ex. H).

The court notes that Kelley's allegations that she was awarded sole ownership of the Property, despite the Superior Court's 2015-2020 orders, appear to be disingenuous. For

9

example, the public record cited by Kelley to support her possessory interest in the Property – a Superior Court Order from November 19, 2010 – did not award Kelley the residence. Rather, it simply vacated a deed that transferred ownership of the Property from Feeney and Kelley to Kelley's brother, which was originally executed in 2001 (purportedly for estate planning purposes in the event Feeney and Kelley died at the same time), and was officially recorded by Kelley nearly nine years later, once Feeney filed suit in Superior Court.  See Order, Feeney v. Kelley, No. 216-210-EQ-193 (recorded as Doc. #8014066 with the Hillsborough Cty. Register of Deeds).  Likewise, on March 21, 2019, the Superior Court found that one of the "other contracts" attached to Kelley's amended complaint at Exhibit H – a June 2016 Warranty Deed – was "recorded well after the Court's final order declaring the parties to be joint owners of the premises," and therefore was "fraudulent and void as a matter of law."  Id.

## III. Discussion

The court finds that Kelley's amended complaint should be dismissed as it fails to state a claim upon which relief may be granted in Count 1 or Count 2.  See Fed. R. Civ. P. 12(b)(6).

A.   **Wrongful eviction**

In Count 1, Kelley alleges that the Attorney Defendants violated her federal constitutional rights by filing a motion in Hillsborough County Superior Court that resulted in her being

10

wrongfully evicted from the Indian Rock Road Property. The court construes her allegations as an invocation of her Fourteenth Amendment, but not her Fifth Amendment, due process rights. See U.S. Const. amend V. (restricting the federal government and its agents, not state government agents).

The Fourteenth Amendment's Due Process Clause provides that no state shall "deprive any person of life, liberty, or property, without due process of law." "Due process is flexible and calls for such procedural protections as the particular situation demands." Mathews v. Eldridge, 424 U.S. 319, 334 (1976) (internal citation omitted). To prevail on a procedural due process claim, a plaintiff must show that he or she "has a protected interest in life, liberty, or property, and that the defendants deprived him or her of that protected interest without constitutionally adequate process." See Foley v. Town of Lee, 871 F. Supp. 2d 39, 47 (D.N.H. 2012) (citing Garcia-Rubíera v. Fortuño, 665 F.3d 261, 270 (1st Cir. 2011); Air Sunshine, Inc. v. Carl, 663 F.3d 27, 34 (1st Cir. 2011)). "To determine what process is constitutionally due," courts generally balance three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the

>   additional or substitute procedural requirement would entail.

Haidak v. Univ. of Mass.-Amherst, 933 F.3d 56, 66 (1st Cir. 2019) (quoting Mathews, 424 U.S. at 335).

Here, Kelley has sufficiently alleged for purposes of preliminary review a general property interest and a privacy interest in real and personal property located at 62 Indian Rock Road before she was dispossessed of such interests by the Superior Court's September 25, 2019 Order.  Nevertheless, her allegations, as supplemented by her attached exhibits and by matters susceptible to judicial notice, fail to show that the defendants (or the Superior Court) dispossessed her of these protected interests without constitutionally adequate process.

The fundamental requirement of constitutionally adequate due process is the opportunity to be heard "at a meaningful time and in a meaningful manner."  Mathews, 424 U.S. at 333 (internal citation omitted).  As noted above, Kelley was given ample opportunity to be heard concerning her interests in the Property during her lengthy state-court litigation against Feeney.  In 2014, the Superior Court conducted a full bench trial at which Kelley, with the aid of retained counsel, was afforded a full and fair opportunity to press her claims and defenses.  The Superior Court ultimately resolved the conflicts in the testimony presented, the credibility of witnesses, and the weight of evidence against Kelley's claim that she was the sole

owner of the Property by ordering a 50/50 partition of the Property and a forced sale.  When Kelley appealed this verdict to the NHSC, that Court affirmed the trial court's verdict, rejecting Kelley's arguments on the papers before it.  Feeney v. Kelley, No. 2015-0049 (N.H. Oct. 9, 2015).

Though Kelley alleges that "no hearing took place" before she was required to vacate the Property, the docket sheet for the state-court litigation indicates that, when Feeney moved to have Kelley vacate the property in September 2016, the Superior Court did in fact hold a live hearing, at which Kelley was afforded the opportunity to be heard.  See Dkt. Sheet Index #77, Feeney v. Kelley, No. 216-210-EQ-00193.  It was only after considering Kelley's written and oral arguments that the Superior Court ruled against her.  Though Kelley's subsequent appeal to the NHSC, her post-trial procedural motions, and her filing for bankruptcy temporarily suspended the Superior Court's ruling, they did not change the fact that Kelley would eventually be required to vacate the Property if and when these appeals and motions were resolved against her – which they were.

Kelley has not shown that the Superior Court, after affording her these opportunities to be heard, was required to hold additional live hearings on Feeney's procedural motions to lift the bankruptcy stay and to have the real estate commissioner take immediate possession of the property.  It is

13

beyond dispute that litigants do not have a constitutional right to a hearing on every motion filed in court. See, e.g., Stevenson v. Bales, 986 F.2d 1429 (10th Cir. 1993); Goodpasture v. Tenn. Valley Auth., 434 F.2d 760, 764 (6th Cir. 1970). "A hearing is required only if the movant makes a sufficient threshold showing that material facts are in doubt or dispute, and that such facts cannot reliably be resolved on a paper record." United States v. Staula, 80 F.3d 596, 603 (1st Cir. 1996) (criminal case). Kelley's allegations fail to explain why the Superior Court could not reliably resolve these motions on the paper record before it without a hearing, or how additional procedural safeguards, such as a live hearing, would have led to a different result. See id. at 603. Furthermore, the court is not aware of any authority suggesting Kelley was entitled to live hearings or interlocutory appeals for procedural motions intended to give effect to pre-existing orders for relief, especially after being afforded a live hearing before the Superior Court on Feeney's motion to vacate in 2016, and live hearing before the Bankruptcy Judge on Feeney's motion for relief from stay in 2019, see Notice of Rescheduled Hr'g, In re Kelley, No. 19-bk-10567 (ECF No. 29).

Accordingly, Kelley's wrongful eviction claim (Count 1) fails to allege any actionable Fourteenth Amendment claim on which the relief she seeks could be granted. For the reasons

stated above, this claim cannot be saved by amendment with additional facts. The district judge should therefore dismiss Count 1 of the amended complaint.

B.  **Unlawful entry, search, seizure, and videotaping**

In Count 2, Kelley asserts that the defendants violated her Fourth Amendment rights against unlawful searches and seizures under the U.S. Constitution by illegally entering, searching, and seizing her purported residence – the Property. Her Fourth Amendments rights are incorporated against the State of New Hampshire and its agents under the Fourteenth Amendment. See Mapp v. Ohio, 367 U.S. 643 (1961).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. To sufficiently plead a Fourth Amendment search claim, a plaintiff's non-conclusory allegations must show that he or she has a "reasonable" or "legitimate" expectation of privacy in the place or thing searched, and that the search of the place or thing was unreasonable. Smith v. Maryland, 442 U.S. 735, 740 (1979). Similarly, to sufficiently plead a Fourth Amendment seizure claim, a plaintiff's complaint must allege (1) some meaningful interference with the plaintiff's possessory interests in his or her property and (2) that the "seizure" of the property was unreasonable. Soldal v. Cook Cty., Ill., 506

U.S. 56, 61–62 (1992); Gold v. Poccia, No. CV 17-104WES, 2018 WL 5288729, at *5 (D.R.I. June 29, 2018), R&R adopted, No. CV 17-104 WES, 2018 WL 4521940 (D.R.I. Sept. 21, 2018).

Kelley's allegations, as supplemented by her attached exhibits and the judicial records she refers to therein, fail to carry her pleading burden for either type of claim. With respect to the "search" claim, the September 25, 2019 Order attached as Exhibit D to Kelley's amended complaint establishes that Kelley no longer enjoyed an objectively reasonable expectation of privacy in the Indian Rock Road Property at the time Russell and the MPD Officers entered the Property on September 29, 2019. See Sept. 25, 2019 Order (Doc. No. 17, at 23). In that Order, the Superior Court explicitly dispossessed Kelley of the Property and forbid her from entering the Property without the Court or Russell's prior approval. Id. Moreover, the Order authorized Russell to take physical possession of the Property. Thus, even if Kelley harbored some lingering reasonable expectation of privacy in the Property after that order issued, see, e.g., Rakas v. Illinois, 439 U.S. 128 (1978) (explaining that a reasonable expectation of privacy turns in large part on whether a person has a possessory interest or the ability to exclude others from the place searched), she could not lawfully exclude Russell from entering and searching the Property, or prevent him from bringing along a police escort

16

when he engaged in these court-sanctioned acts, see, e.g., United States v. Matlock, 415 U.S. 164, 171 (1974) (Permission to search may be obtained from a third party who possesses common authority over the premises.).

Additionally, Kelley's allegations fail to show how any "search" or "seizure" of the Property was unreasonable. Despite her conclusory allegations to the contrary, the September 25, 2019 Order did not require that the Merrimack Sheriff's Department be present when Russell, as real estate commissioner, took physical possession of the Property. Instead, the Order simply instructs the Sherriff's Department to assist Russell in taking possession in the event Russell so requested. See Sept. 25, 2019 Order (Doc. No. 17, at 23). For similar reasons, Kelley's allegations fail to show how the presence of MPD Officers, as opposed to the Sherriff's Department, transformed the otherwise reasonable search and seizure of the Property into an act that violated the protections of the Fourth Amendment, particularly in light of the September 25, 2019 Order's unambiguous decree that she was dispossessed of her right to control the Property.

Finally, to the extent Kelley contends that the defendants' entry onto the Property on September 29, 2019 was unlawful because the September 25, 2019 Order was "unjust," her amended claims are precluded by the doctrine of collateral estoppel,

17

which bars a litigant from litigating an issue that was fully and fairly adjudicated either in an earlier federal or state-court proceeding.³  See Robb Evans & Assocs., LLC v. United States, 850 F.3d 24, 31 (1st Cir. 2017); Johnson v. Mahoney, 424 F.3d 83, 93 (1st Cir. 2005); see also Garod v. Steiner Law Office, PLLC, 170 N.H. 1 (2017) (explaining that the New Hampshire courts give preclusive effect to an issue decided by a state-court if: "(1) the issue subject to estoppel is identical in each action; (2) the first action resolved the issue finally on the merits; (3) the party to be estopped appeared in the first action or was in privity with someone who did; (4) the party to be estopped had a full and fair opportunity to litigate the issue; and (5) the finding at issue was essential to the first judgment").

As discussed above, Kelley had a full and fair opportunity to litigate the issues underlying the Superior Court's September 25, 2019 Order, including whether Feeney possessed a shared property interest in the Indian Rock Road Property, whether it was necessary to sell the Property upon the court-ordered 50/50 partition, and whether Kelley's filing of bankruptcy deprived Feeney of the right to pursue her court-awarded claims against

---

³ Similarly, "under what has come to be known as the Rooker-Feldman doctrine, lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments."  See, e.g., Lance v. Dennis, 546 U.S. 459, 463 (2006).

the Indian Rock Road Property, throughout the course of her state-court and federal bankruptcy proceedings. The Hillsborough County Superior Court ruled against Kelley on each of these issues after substantial motions practice and several live hearings. The New Hampshire Supreme Court affirmed the Superior Court's orders partitioning and selling the Property. And the Bankruptcy Court explicitly granted Feeney relief from the bankruptcy stay so that she could proceed with the partition and sale of the Property. Each prerequisite for collateral estoppel is satisfied. As such, Kelley is barred from revisiting the substance of these issues through either a procedural due process or a § 1983 action in this court.

In sum, Kelley's unlawful search and seizure claim (Count 2) fails to allege any actionable Fourth Amendment violation on which the relief Kelley seeks could be granted and cannot be saved by amendment with additional facts. Accordingly, the district judge should dismiss Count 2 of the amended complaint.

## IV.   Conclusion

For the foregoing reasons, the district judge should dismiss Kelley's amended complaint (Doc. No. 17) in its entirety. Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). Failure to file objections within the

19

specified time waives the right to appeal the District Court's order. See United States v. De Jesus-Viera, 655 F.3d 52, 57 (1st Cir. 2011); Sch. Union No. 37 v. United Nat. Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010).

/s/ Andrea K. Johnstone
Andrea K. Johnstone
United States Magistrate Judge

December 28, 2020

cc: Karyn M. Kelley, pro se